IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


RICARDO THOMAS                                                    PLAINTIFF

v.                                    Civil No.   1:23-cv-01061-BAB

SHERIFF LEROY MARTIN, Columbia
County, Arkansas; JAIL ADMINISTRATOR                             DEFENDANTS
GEAN SIEGER, Columbia County Detention
Center; and CHIEF DEPUTY JERRY
MANESS, Columbia County Detention
Center


**MEMORANDUM OPINION AND ORDER**

This is a civil rights action filed by Ricardo Thomas ("Thomas") pursuant to the provisions of 42 U.S.C. § 1983.  The case is before the undersigned pursuant to the consent of the parties. (ECF No. 26).  Currently before the Court for decision is the Motion for Partial Summary Judgment filed by the Defendants.  (ECF Nos. 28-30, 33 & 36).  Plaintiff has responded to the Motion.  (ECF Nos. 32 & 34).

### I.      BACKGROUND

Thomas is a pretrial detainee incarcerated at the Columbia County Detention Center ("CCDC").  (ECF No. 7 at 2).  Thomas contends his constitutional rights have been violated in a variety of ways.

First, he contends the conditions under which he is confined are unhealthy and unsafe. (ECF No. 7 at 4.  In this regard, Thomas maintains there are severe leaks in the CCDC's roof which has led to the presence of black mold in the showers, on the walls, on some windows, the bunks, and in the air vents.  *Id.*  Thomas says the black mold has caused him to suffer medical problems including headaches, breathing problems, anxiety, and mental anguish which in turn has

1

caused sleeping problems.  *Id.*  at 3-4.  Thomas believes there are times he stops breathing while he is sleeping and wakes up "gasping for air and coughing."  *Id.* at 9.  Thomas also states there is rust on the tables they eat on and no sink in the pod which makes it difficult to wash his hands and brush his teeth.  *Id.* at 5.

Second, Thomas maintains he has been served spoiled food and food that had rubber, maggots, and other bugs in it.   (ECF No. 7 at 6 & 8).   After eating the spoiled food, Thomas indicates he because nauseated and had diarrhea.  *Id.* at 8.  Thomas says he choked on the rubber and ate some of the maggot infested food causing him to become severely nauseated.  *Id.* at 6. Thomas indicates he now has a phobia about beans and rice.  *Id.*

Third, Thomas states he has seen several inmates having epileptic seizures.  (ECF No. 7 at 10).  He indicates the CCDC has no medical staff on duty so the inmates could not receive medical attention.  *Id.*

Fourth, Thomas maintains he has been housed in an unsafe environment.  (ECF No. 7 at 10).  Thomas states he has been improperly housed with convicted inmates.  *Id*.  He indicates he is in constant fear of being "jumped by other inmates."  *Id.*  Thomas says fights between inmates happen "all the time" resulting in "their heads [being] busted open."  *Id.*  Thomas asserts nothing is ever done about this and it causes him to suffer from nightmares, stress, and anxiety.  *Id.*

Fifth, Thomas indicates he has been given inadequate recreation time.  (ECF No. 7 at 10). According to Thomas, he spent over four months without having any yard call at all.  *Id.* Otherwise, Thomas says he is on 24-hour lock down and only goes to yard call once or twice a week for ten to fifteen minutes at a time.  *Id.*

Sixth, Thomas asserts he has no access to world news.  (ECF No. 7 at 10).  As a result, Thomas says he has no idea what is going on in the world.  *Id.*

Seventh, Thomas maintains there is no visitation allowed at the CCDC.  (ECF No. 7 at 10).

He asserts this adds to his mental stress.  *Id.*

Finally, Thomas says he has asked several times to be seen by a psychiatrist but has been

denied each time.  (ECF No. 7 at 10).  *Id.*  Thomas states he fears he will have a mental breakdown

or die in the CCDC.  *Id.*

Except for his claim about foreign objects being in his food, Thomas has sued the

Defendants in both their individual and official capacities.  (ECF No. 7 at 5, 7 & 8).  As relief, he

seeks compensatory damages for pain and suffering from headaches, breathing problems, anxiety,

his diminished health, and mental anguish.  *Id.* at 9.  He also seeks an award of punitive damages.

*Id.*

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences

in the light most favorable to the non-moving party, the record "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Once

a party moving for summary judgment has made a sufficient showing, the burden rests with the

non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine

issue of material fact exists."  *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.

1999).  A fact is "material" if it may "affect the outcome of the suit."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical

doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient

evidence to support a jury verdict in their favor."  *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."  *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.   DISCUSSION

Defendants have moved for partial summary judgment maintaining Thomas failed to follow the grievance procedure with respect to the following claims:  (1) he was subjected to mold and rust; (2) he had no sink; (3) the roof leaked; (4) there were inadequate living conditions (other than complaining generally about the food); (5) he was "having medical conditions from mold, rust, lack of sink, roof leak, or inadequate living conditions and was denied medical care; and (6) he was subjected to seeing people having seizures.

### A.  Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") mandates exhaustion of available administrative remedies before an inmate files suit.  Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules."  *Id.* at 218 (internal quotation marks and citation omitted).  The Court stated that the "level of detail necessary in a grievance to comply with the

grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

## B. The CCDC's Grievance Policy

The CCDC has a grievance policy. (ECF No. 28-1 at 5). The policy apparently has not been updated since the jail installed kiosks, because the policy states forms are provided by the jailer and picked up once a day.[1] *Id.* Defendant Sieger indicates the policy is available to inmates via the kiosks and all grievances submitted as an exhibit in this case were completed in electronic format.[2] (ECF No. 28-1 at 1); (ECF No. 36). The substance of the grievance "must clearly describe all facts and all requests." (ECF No. 28-1 at 5). No deadline is specified for the submission of grievances. *Id.* at 5-7. Except for emergency grievances, a grievance is to be investigated and resolved "within a reasonable time." *Id.* at 5. The filing of an appeal is permissive. *Id.* at 6 ("The grievant may appeal any response or lack of response to the sheriff, who shall respond in writing").

The Court now turns to an examination of each claim Defendants argue Thomas failed to submit to the grievance procedure.

## 1. Mold and Rust in the CCDC

The Court agrees that none of the grievances address the issue of mold or rust in the jail. Because the grievance policy requires the grievant to "clearly describe all facts," the Court agrees Thomas cannot proceed with a conditions of confinement claim based on the presence of mold or rust.

---

[1] The policy indicates it is to be reviewed "at least annually" and "updated as needed." (ECF No. 28-1 at 7).

[2] Defendants failed to submit the grievances when they filed their summary judgment motion. Instead, the grievances were furnished to the Court on March 1, 2024.

While the Court is sympathetic to Thomas, particularly considering news articles[3] in which Defendant Martin advised the Quorum Court that the leaking roof had led to mold which has spread throughout the facility and created a health hazard, these facts cannot serve as a substitute for Thomas' submission of a grievance pursuant to the CCDC's policy.

This does not mean Thomas is precluded from bringing a claim based on the presence of mold and rust in the facility—just that he cannot bring the claim in this lawsuit.  Instead, after submitting grievances regarding these issues, Thomas may file a separate complaint asserting these claims.

## 2.  No Sink

The Court disagrees with Defendants' assertion that none of Thomas' grievances mention the lack of a sink.  In his grievance filed on March 2, 2023, he mentions the inmates are required to ask for water which is supplied in coolers because there is no available sink.  (ECF No. 36 at 31).   The grievance also indicates the water they were provided with was dirty and had hair in it. This grievance was filed before this lawsuit was initiated on June 14, 2023.  Thomas may proceed with this claim.

## 3.  The CCDC's Leaking Roof

The Court agrees with Defendants that none of Thomas' grievances address the issue of the leaking roof.  Thomas may not proceed with this claim.

---

[3] Thomas submitted the news articles as part of his summary judgment response.  (ECF No. 34 at 6-7).  Thomas also appears to be raising a new claim about interference with his mail.  He may not submit a new claim in this manner.  Thomas must first exhaust his administrative remedies and then he may file a new § 1983 action raising the claim.

However, as noted above with respect to the presence of mold and rust, once Thomas exhausts his administrative remedies, he may file a new lawsuit against Defendants raising any claims dismissed from this lawsuit because in this memorandum opinion.

### 4. Living Conditions

The Court agrees with Defendants that Thomas did not submit grievances about being on 24-hour lock-down, the lack of recreational time, and being improperly housed with convicted inmates.  Thomas may not proceed with these claims in this lawsuit.  He may, of course, after exhausting the grievance procedure, include these claims in any new lawsuit he files.

Thomas did submit grievances regarding the temperature in the pods.  He may proceed with this claim.

### 5. Inadequate Diet

With respect to his complaints about the food at the CCDC, the Court agrees that none of Thomas' grievances mention the presence of rubber in his food.  Thomas did, however, submit a grievance mentioning bugs in his food.  A maggot is defined as "a soft-bodied legless grub that is the lava of a dipterous insect (such as the housefly)."[4]   While insects and bugs have different dictionary definitions the Court believes in common usage the term bug encompasses maggots.

Thomas may not proceed with his claim regarding rubber in his food but may proceed with his claims regarding bugs and maggots in his food, being served spoiled food, inadequate sized portions, the quality of the food, and his inability to eat beans.

### 6. Medical Conditions

Defendants maintain Thomas may not proceed on his argument that he suffered physical injury because of exposure to mold, rust, the lack of a sink, or certain inadequate living conditions.

---

[4] https://www.merriam-webster.com/dictionary/maggot (last accessed March 14, 2024).

The Court agreed none of the grievances mention these specific living conditions and thus precludes Thomas from including them in his inadequate living conditions claim. However, the Court disagrees with Defendants' attempt to parse out from Thomas' denial of medical care claim the element of causation. The Court will not preclude Thomas from arguing the conditions at the CCDC caused him to suffer symptoms that required medical treatment and that he was denied adequate treatment.

### 7.  Inmates having Seizures

The Court agrees with Defendants that none of Thomas' grievances mention having to watch people have seizures without medical assistance being provided. Thomas may not proceed with this claim.

### IV.    CONCLUSION

For the reasons stated, the Court concludes that Defendants' Motion for Partial Summary Judgment should be **GRANTED in part and DENIED in part.** Specifically, the Court finds that Thomas failed to exhaust his administrative remedies with respect to the following claims and the Motion for Partial Summary Judgment as to these claims is **GRANTED** and the claims are dismissed:

- The presence of mold or rust in the CCDC;

- The leaking roof;

- Being placed on 24-hour lock-down, the lack of recreation time, and being improperly housed with convicted inmates;

- The presence of rubber in his food; and

- Having to watch other inmates having seizures.

As to all remaining claims, the Motion for Partial Summary Judgment is **DENIED** and Thomas may proceed to trial on the following claims:

- Claim there are no sinks or clean water available to Thomas in his pod for personal hygiene needs;

- Claim regarding unhealthy temperatures maintained in the CCDC;

- Claims regarding bugs and maggots in his food, being served spoiled food, inadequate sized portions, the quality of the food, and his inability to eat beans; and

- Claim the conditions at the CCDC caused him to suffer symptoms that required medical treatment and that he was denied adequate treatment.

**DATED** this 27th day of March 2024.

/s/ Barry A. Bryant
_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE